

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2006

# Vasquez Ramirez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2640

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Vasquez Ramirez v. Atty Gen USA" (2006). *2006 Decisions.* Paper 761.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/761

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-2640

FELIX ALFONSO VASQUEZ RAMIREZ,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

On Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A95-902-646
(U.S. Immigration Judge: Honorable Henry S. Dogin)

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 24, 2006

Before: SCIRICA, *Chief Judge*, NYGAARD, *Circuit Judge*,
and YOHN, *District Judge*[*]

(Filed: July 11, 2006)

OPINION OF THE COURT

_____

[*]The Honorable William H. Yohn Jr., United States District Judge for the Eastern
District of Pennsylvania, sitting by designation.

SCIRICA, *Chief Judge*.

Felix Alfonso Vasquez Ramirez ("Vasquez") seeks review of an IJ's decision denying his applications for asylum and withholding of removal. We have jurisdiction to review the BIA's order affirming the IJ's decision under 8 U.S.C. § 1252. We will grant the petition for review.

I.

Vasquez is a native and citizen of Colombia. On January 17, 2002, Vasquez entered the United States on a non-immigrant B2 visa, which authorized him to stay until July 16, 2002. He remained in the United States after his authorized stay expired, having filed an application with the Bureau of Citizenship and Immigration Services for asylum, withholding of removal, and withholding under the Convention Against Torture (CAT).[1]

Vasquez's claim for relief is based on extortion demands made to him and others in his community by members of a non-governmental guerilla group, the Revolutionary Armed Forces of Colombia (FARC). Vasquez lived and owned a business in Pereira, Colombia. He also owned a farmhouse and vacation home in Apia, a small community about 38 miles outside of Pereira. Vasquez was a leader in the Apia community. He actively participated in the official Liberal Party movement, helping raise funds for

---

[1]Vasquez also requested and was denied voluntary departure. But he does not challenge on appeal the denial of either that relief or of withholding under CAT. (Pet'r Br. 4.)

2

community projects in Apia such as the installation of telephones and roads, vaccinations for children, and garbage collection.

According to his testimony, one day in December 2000, while staying at his vacation home in Apia, Vasquez received a letter from FARC demanding money. The letter stated in part

> We are aware that your properties and businesses are located in our areas of operations. Because of this, it is necessary to undertake some form of collaboration and economic agreement for the financing of the military of the people FARC-EP.
>
> By your directly communicating with us as soon as possible, you will avoid any other type of pressure. . . . The amount of tax will be agreed to between the parties. In this way you will be part of forming the New Colombia.

(App. 204.) Some time after receiving this letter, Vasquez left Colombia with his wife and visited his son in the United States, who was attending college in New Jersey. While Vasquez was away, an Apia neighbor — Vasquez's wife's cousin Emilio Hincapie Bedoya — was murdered by FARC for failing to comply with a similar extortion demand. Like Vasquez, Hincapie was a landowner and leader of the Apia community.

Vasquez returned to Colombia, but not to Apia. He then learned FARC was engaging in a series of kidnappings in Apia. Fearing for his safety, Vasquez again left Colombia for the United States, this time without his wife, who stayed behind in Pereira to care for her elderly father. While he was away, FARC kidnapped Vasquez's son-in-law, Ricardo Megio Salgido. Megio, also a landowner, had gained prominence in his community through his coffee plantation. Megio was eventually released, and Vasquez

3

again returned to Pereira, believing the situation had improved. But he soon learned FARC had gained control of a larger portion of the country and decided to flee permanently with his wife to the United States. On January 3, 2002, just before he left Colombia for the final time, Vasquez filed a complaint with Colombian authorities about FARC's activities. After arriving in the United States, Vasquez learned another of his wife's cousins and a cousin's son had both been kidnapped.

The IJ denied Vasquez's application for relief, finding he could not demonstrate eligibility for either withholding of removal or asylum because he was persecuted by FARC for economic reasons, not political. Vasquez appealed to the BIA, which affirmed without opinion.

## II.

Where the BIA affirms the IJ's decision without opinion, we review the opinion of the IJ. *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002). We review factual findings under the substantial evidence standard. 8 U.S.C. § 1252(b)(4)(B); *Tarrawally v. Ashcroft*, 338 F.3d 180, 184 (3d Cir. 2003). Under the substantial evidence standard, findings are upheld if a reasonable fact finder could reach a similar conclusion based on the record. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We will only reverse if the IJ's findings are unsupported by the record or based on mere conjecture. *Gao*, 299 F.3d at 272. But the IJ must address the petitioner's claims and give "some insight into its reasoning." *Awolesi v. Ashcroft*, 341 F.3d 227, 232–33 (3d Cir. 2003); *see also Kayembe*

*v. Ashcroft*, 334 F.3d 231, 238 (3d Cir. 2003) ("When deficiencies in the BIA's decision make it impossible for us to meaningfully review its decision, we must vacate that decision and remand so that the BIA can further explain its reasoning." (citing *Abdulai v. Ashcroft*, 239 F.3d 542, 551 (3d Cir. 2001)).

Both withholding of removal and asylum require a showing of persecution or fear of persecution "on account of" one of five enumerated grounds:  race, religion, nationality, membership in a particular social group, or political opinion.  8 U.S.C. § 1101(a)(42) (asylum); 8 U.S.C. § 1231(b)(3)(A) (withholding of removal).  In denying Vasquez's application for asylum, the IJ concluded Vasquez could have been targeted for two reasons:  (1) his wealth, and (2) his political activities.  The IJ rejected the former as not falling within an enumerated ground, and the latter as unsupported by the evidence.  But there is another possible reason for the persecution Vasquez experienced, which neither the IJ nor the BIA addressed.  He could also have been targeted for his "membership in a particular social group."[2]

---

[2]In his petition to this Court, Vasquez focuses on the IJ's failure to find he was persecuted on account of his political opinion.  But his brief also raises an argument about his membership in a particular social group.  Vasquez has repeatedly asserted, both here and before the IJ, that he was targeted because of his status as a landowner who holds a prominent position in the community.  These assertions are sufficient to avoid waiver of the particular social group issue.  *See Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 191 (3d Cir. 2001) (addressing issue raised "implicitly" in plaintiffs' brief).  Both the IJ and the BIA neglected to address the social group issue, which Vasquez fairly raised in front of each.  Furthermore, the IJ defined the legal issues without regard to those raised in Vasquez's application.

According to the IJ, if Vasquez was targeted because of his status as a businessman and landowner, he was persecuted for purely "economic" reasons. (App. 55–56.) The BIA has taken the position that "wealth" itself — that is, the characteristic of "having money" — does not fall within one of the enumerated grounds. *See In re V-T-S-*, 21 I & N Dec. 792, 798–99 (BIA 1997) (rejecting asylum claim where kidnapping was motivated by petitioner's ability to pay a ransom, rather than by her membership in the social group of Filipinos of Chinese ancestry); *In re S-V-*, 22 I. & N. Dec. 1306, 1310 (BIA 2000) ("[I]n the absence of evidence to suggest other motivations, evidence that the perpetrators were motivated by a victim's wealth will not support a finding of persecution within the meaning of the Act."), *overruled on other grounds by Zheng v. Ashcroft*, 332 F.3d 1186, 1194-96 (9th Cir. 2003). But there is support for the proposition that certain manifestations of property holding, such as owning land, could constitute the type of "immutable characteristic" that would make up a "particular social group" under the BIA's definition of that term.[3] *See Matter of Acosta*, 19 I. & N. Dec. 211, 233 ("The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience such as former military leadership or *land ownership*.") (emphasis added), *overruled on other grounds by Matter of*

_____

[3]In *Matter of Acosta*, the BIA defined "particular social group" as "a group of persons all of whom share a common, immutable characteristic." 19 I. & N. Dec. 211, 233 (BIA 1985); *see Fatin v. INS*, 12 F.3d 1233, 1239 (3d Cir. 1993) (adopting the *Acosta* definition of "particular social group").

6

*Mogharrabi*, 19 I. & N. Dec. 439, 439 (BIA 1987).  At least one of our sister courts has explicitly distinguished between "wealth" and "landownership" in defining a "particular social group."  *Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 672 (7th Cir. 2005) (holding that "the educated, landowning class of cattle farmers targeted by FARC" constitutes a "particular social group" for refugee status).

In his asylum application, filed June 17, 2002, Vasquez asserted eligibility for asylum based on both "political opinion" and "membership in a particular social group." (App. 296.)  Despite this, when the asylum officer initially assessed Vasquez's application, she recorded in her Referral Assessment that, "Applicant fears that he will be killed by FARC on account of his political opinion."  (*Id.* 115.)  Possibly as a result, the IJ never considered the possibility that Vasquez could have experienced, or was likely to experience, persecution on account of his membership in a particular social group. Vasquez again raised the social group issue on appeal to the BIA (*Id.* 38), but the BIA affirmed the IJ's decision without opinion.

Without further development of this claim, we are unable to define the precise social group for which Vasquez claims he was persecuted.  It follows that we cannot decide here whether Vasquez was persecuted on account of his membership in such a group.  As the Court of Appeals for the Second Circuit has recently noted, the BIA's interpretation of "particular social group" from *Acosta* "is general and its application does not reliably control particular instances."  *Ucelo-Gomez v. Gonzales*, 448 F.3d 180,

7

187–88 (2d Cir. 2006) (remanding for a determination by the BIA of whether "affluent Guatemalans" constitute a "particular social group").  These matters "require[] determining the facts and deciding whether the facts as found fall within a statutory term."  *Gonzales v. Thomas*, __ U.S. __, 126 S. Ct. 1613, 1615 (2006).  Accordingly, they are matters for the agency to determine in the first instance.  *Id.*; *see also Ucelo-Gomez*, 448 F.3d at 186 ("[W]here (as here) the BIA has yet to decide whether a group, a thing, or a situation falls within the ambit of a statutory term, the proper course is for the reviewing court to remand the matter to the BIA.").

III.

We will grant the petition for review, vacate the Board's order, and remand the matter for further proceedings consistent with this opinion.