# In re S-V-, Respondent

*Decided May 9, 2000*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An applicant for protection under Article 3 of the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment must establish that the torture feared would be inflicted by or with the acquiescence of a public official or other person acting in an official capacity; therefore, protection does not extend to persons who fear entities that a government is unable to control.

Eduardo Soto, Esquire, Miami, Florida, for respondent

Before: Board En Banc: DUNNE, Vice Chairman; SCIALABBA, Vice Chairman; VACCA, HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, JONES, GRANT, and MILLER, Board Members. Concurring Opinion: VIL-LAGELIU, Board Member. Concurring and Dissenting Opinion: SCHMIDT, Chairman; joined by GUENDELSBERGER and MOSCATO, Board Members. Dissenting Opinion: ROSENBERG, Board Member.

HEILMAN, Board Member:

This case was last before us on May 26, 1999, when we dismissed the respondent's appeal from a decision of an Immigration Judge finding him removable as charged. The respondent has filed a motion to reopen the proceedings in order to apply for withholding of removal under section 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1231(b)(3) (Supp. II 1996), and to request protection under Article 3 of the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture"). The Immigration and Naturalization Service has not submitted a response. The motion will be denied.

## I. PROCEDURAL HISTORY

The record reflects that the respondent is a native and citizen of Colombia. He was admitted to the United States on or about February 7, 1981, as a lawful permanent resident. On February 4, 1998, the respondent was convicted in the Circuit Court of Broward County, Florida, of the offenses of grand theft, resisting arrest without violence, and driving while his license was suspended. He received a sentence of 4 years' imprisonment. The respondent was also convicted at that time of robbery and was sentenced to 4 years' imprisonment, to run concurrently with the other sentence.

## II. MOTION TO REOPEN

In his motion, the respondent argues that he would be in danger from nongovernmental guerrilla, narcotrafficking, and paramilitary groups in Colombia. The respondent contends, both in his motion and in his attached application for withholding of removal, that the guerrillas finance their operations through kidnaping. According to the respondent, ever since the Government of Colombia gave the guerrillas land as an element of peace negotiations, authorities are no longer able to control the kidnaping that occurs nationwide. The respondent contends that individuals who are kidnaped suffer subhuman conditions at the hands of their captors, and he asserts that he would be a target for kidnapers because he has family in the United States and is unable to speak Spanish correctly.

In support of his motion, the respondent has submitted newspaper articles detailing the violence, including kidnaping, accompanying the ongoing civil war in Colombia; a Department of State travel warning stating that United States citizens have been the victims of threats, kidnaping, hijacking, and murder; and a 1998 report on human rights practices in Colombia prepared by the Department of State. *See* Bureau of Democracy, Human Rights and Labor, U.S. Dep't of State, *Colombia Country Report on Human Rights Practices for 1998* (Feb. 26, 1999), *reprinted in* Committees on Foreign Relations and International Relations, 106th Cong., 1st Sess., *Country Reports on Human Rights Practices for 1998* 545 (Joint Comm. Print 1999) [hereinafter *Country Reports*].

Motions to reopen in removal proceedings will not be granted unless the respondent can show that the evidence sought to be offered is material and was not available at his former hearing. 8 C.F.R. § 3.2(c)(1) (2000). A motion to reopen must state the new facts to be proved and must be supported by affidavits or other evidentiary material. *Id.* In addition, a motion to reopen will not be granted unless the respondent establishes a prima facie case of eligibility for the underlying relief sought. *See INS v. Abudu*, 485 U.S. 94 (1988).

We have found that a respondent demonstrates prima facie eligibility for relief where the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied. *Matter of L-O-G-*, 21 I&N Dec. 413, 419 (BIA 1996). We have not required a conclusive showing that eligibility for relief has been established. *Id.* at 418-19. Rather, we have reopened proceedings "'where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening.'" *Id.* (quoting *Matter of Sipus*, 14 I&N Dec. 229 (BIA 1972)). The standard for granting reopening of proceedings is the same for both asylum and withholding. *INS v. Abudu*, *supra* (regarding deportation proceedings).

## III. WITHHOLDING OF REMOVAL

### A. Particularly Serious Crime

Section 241(b)(3)(A) of the Act specifies that there shall be a restriction on removal to a country where an alien's life or freedom would be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion. Section 241(b)(3)(B)(ii) of the Act states that an alien is ineligible for withholding of removal if "the alien, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States." The final paragraph of section 241(b)(3)(B) states, in pertinent part, as follows:

> For purposes of clause (ii), an alien who has been convicted of an aggravated felony (or felonies) for which the alien has been sentenced to an aggregate term of imprisonment of at least 5 years shall be considered to have committed a particularly serious crime. The previous sentence shall not preclude the Attorney General from determining that, notwithstanding the length of sentence imposed, an alien has been convicted of a particularly serious crime.

We have recently held that determining whether an alien convicted of an aggravated felony and sentenced to less than 5 years' imprisonment has been convicted of a particularly serious crime requires an individual examination of the nature of the conviction, the sentence imposed, and the circumstances and underlying facts of the conviction. *Matter of S-S-*, 22 I&N Dec. 458 (BIA 1999); *see also Matter of Frentescu*, 18 I&N Dec. 244 (BIA 1982), *modified*, *Matter of C-*, 20 I&N Dec. 529 (BIA 1992), *Matter of Gonzalez*, 19 I&N Dec. 682 (BIA 1988). We have stated that crimes against persons are more likely to be categorized as particularly serious, but that there may be instances where a crime (or crimes) against property will be considered to be particularly serious. *Matter of S-S-*, *supra*; *Matter of Frentescu*, *supra*, at 247. Moreover, we have found convictions for armed

robbery to be convictions for particularly serious crimes. *Matter of S-S-*, *supra*; *Matter of L-S-J-*, 21 I&N Dec. 973 (BIA 1997); *Matter of D-*, 20 I&N Dec. 827 (BIA 1994).

The statutory provisions under which the respondent was convicted require an intent to deprive a person of property through the use of force, violence, assault, or putting in fear. Fla. Stat. Ann. §§ 812.13(1), 812.13(2)(c) (West 1998). In the instant case, the record of conviction pertaining to the respondent's robbery reflects that he pulled a 24-karat gold chain from the victim's neck and the victim fell to the ground. Thus, the respondent took the victim's property by force. Moreover, the record of conviction pertaining to the respondent's grand theft details the theft of a computer, two videocassette recorders, and a printer from a school.

We find that the respondent's robbery conviction, which involves a violent crime against a person, is a conviction for a particularly serious crime. Moreover, we consider 4 years to be a significant term of imprisonment. *See, e.g.*, *Matter of S-S-*, *supra*, (finding the length of the respondent's sentence, 55 months, to be a significant factor supporting the conclusion that his robbery conviction was for a particularly serious crime). Because we have determined that the respondent has been convicted of a particularly serious crime, we find that he cannot demonstrate prima facie eligibility for withholding of removal. *See* section 241(b)(3)(B) of the Act; *Matter of S-S*, *supra*.

### B. On Account of

In addition, we observe that the respondent has not demonstrated that his fear of harm in Colombia is on account of his race, religion, nationality, membership in a particular social group, or political opinion. *See INS v. Elias-Zacarias*, 502 U.S. 478 (1992); *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987). We have held that an applicant for asylum need not show conclusively why persecution occurred in the past or is likely to occur in the future, but must produce evidence from which it is reasonable to conclude that the harm was motivated, at least in part, by an actual or imputed protected ground. *Matter of S-P-*, 21 I&N Dec. 486, 489-90 (BIA 1996). Furthermore, the respondent is not expected to provide direct proof of a persecutor's motives, but must provide some evidence, either direct or circumstantial, of those motives. *INS v. Elias-Zacarias*, *supra*, at 483.

The Department of State Country Report contained in the record indicates that, in 1998, guerrilla groups were active in 700 of Colombia's 1,073 municipalities and supplanted the state authority in some sparsely populated areas. *Country Reports*, *supra*, at 545. During the first 9 months of that year, the civil war resulted in 2,000-3,000 deaths and generated 300,000 internally displaced persons. *Id.* at 547. According to the Department of

State, 2,216 people were kidnaped during 1998 and more than 700 victims remained captives of the guerrillas at the end of the year. *Id.* at 553. A newspaper article submitted by the respondent indicates that even poor and middle class persons are at risk of being kidnaped. Tim Johnson, *Insecurity Stalks Colombians in the Countryside*, Miami Herald, Apr. 18, 1999. Furthermore, in a travel warning dated June 10, 1999, the Department of State reported that more than a dozen United States citizens were kidnaped in the first 5 months of 1999 alone.

The respondent has not presented evidence that reveals why he fears being kidnaped by the guerrillas, and he implies only that he fears kidnaping because of his perceived wealth. We have held that, in the absence of evidence to suggest other motivations, evidence that the perpetrators were motivated by a victim's wealth will not support a finding of persecution within the meaning of the Act. *Matter of V-T-S-*, 21 I&N Dec. 792 (BIA 1997); *Matter of T-M-B-*, 21 I&N Dec. 775 (BIA 1997). The respondent has neither alleged that any political opinion would be imputed to him nor provided evidence to support such a claim. The respondent also has not shown that he would be persecuted on account of his membership in a particular social group. Although we recognize that Colombia currently is in the grip of an ongoing civil war, it is well established that an asylum applicant's fear of harm resulting from general conditions of violence and civil unrest affecting the populace as a whole in his home country does not constitute a "well-founded fear of persecution" within the meaning of the Act. *E.g., Matter of Sanchez and Escobar*, 19 I&N Dec. 276 (BIA 1985), *aff'd sub nom. Sanchez-Trujillo v. INS*, 801 F.2d 1571 (9th Cir. 1986).

We find that the respondent has failed to demonstrate that his fear of persecution from guerrillas in Colombia is on account of one of the grounds specified in the Act. We therefore conclude that reopening of these proceedings is not warranted because the respondent has failed to articulate a basis for relief under section 241(b)(3)(A) of the Act.

## C. Clear Probability

An alien seeking relief from removal under section 241(b)(3) of the Act must establish that he faces a clear probability of persecution if returned to the country to which he would be removed. *See INS v. Stevic*, 467 U.S. 407 (1984). Thus, an application for withholding must be supported by evidence establishing that it is more likely than not that the alien would be subject to persecution. *Id.* at 429-30. The respondent has not put forward sufficient evidence to establish that it is more likely than not that he will face persecution if returned to Colombia. His claim is based entirely on general conditions arising from the civil war in his homeland.

## D. Conclusion

We conclude that the respondent has failed to present sufficient evidence in his motion to reopen to demonstrate eligibility for withholding of removal. Most significantly, we find that he is barred from eligibility for such relief as an alien convicted of a particularly serious crime. Moreover, the evidence the respondent has provided of general conditions of violence and civil unrest in Colombia fails to establish that his life or freedom would be threatened in that country on account of a protected ground. Finally, his generalized assertions that a person in his situation faces a clear probability of persecution are insufficient to establish eligibility for withholding. Reopening of proceedings to allow the respondent to apply for relief under section 241(b)(3) of the Act is consequently not warranted.

## IV. CONVENTION AGAINST TORTURE

The respondent has also requested reopening of the proceedings to apply for relief under Article 3 of the Convention Against Torture. Current regulations, which became effective on March 22, 1999, establish specific procedures for raising a claim for protection under Article 3 of the Convention Against Torture and accord jurisdiction to Immigration Judges and the Board to consider such claims. 8 C.F.R. §§ 208.16-208.18 (2000). The regulations provide that an applicant must establish that it is more likely than not that he or she would be tortured if returned to the proposed country of removal. 8 C.F.R. § 208.16(c)(2). However, an applicant is not required to demonstrate that he or she would be tortured on account of a particular belief or immutable characteristic. *See* Report of the Committee on Foreign Relations, S. Exec. Rep. No. 101-30, at 16 (1990) ("Senate Report"). The regulations do require that the harm be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1).

The respondent in the instant case does not allege that he fears torture inflicted by a government official. He therefore must provide evidence that the torture he fears at the hands of the guerrillas would be "at the instigation of or with the consent or acquiescence of" Colombian officials or persons acting in an official capacity. 8 C.F.R. § 208.18(a)(1).

### A. "Acquiescence"

A public official's acquiescence to torture "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 208.18(a)(7). In its resolution of advice and

consent to the Convention Against Torture, the United States Senate included an understanding replacing the word "knowledge" in this definition of acquiescence with the word "awareness," indicating that actual knowledge of activity constituting torture is not required. *See* 136 Cong. Rec. S17,486, 17,491-2 (daily ed. Oct. 27, 1990). This revision is also reflected in the regulations. *See* 8 C.F.R. § 208.18(a)(7). The Senate Committee on Foreign Relations clarified the point by stating that "[t]he purpose of this condition is to make it clear that both actual knowledge and 'willful blindness' fall within the definition of the term 'acquiescence.'" Senate Report, *supra*, at 9. Consequently, the definition of "torture" "includes only acts that occur in the context of governmental authority." Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478, 8483 (1999) (citing S. Treaty Doc. No. 100-20, at 19).

The Senate's inclusion of this definition of acquiescence in its understandings to the Convention Against Torture indicates that it meant to exclude or to modify the legal effect of this particular provision of the treaty as applied within the United States. *See* Vienna Convention on the Law of Treaties, art. 2, § 1(d), U.N. Doc. A/Conf.39/27, at 289 (1969); Restatement (Third) of the Foreign Relations Law of the United States § 314 (1986). We therefore interpret the regulation at 8 C.F.R. § 208.18(a) to be limiting. To demonstrate "acquiescence" by Colombian Government officials, the respondent must do more than show that the officials are aware of the activity constituting torture but are powerless to stop it. He must demonstrate that Colombian officials are willfully accepting of the guerrillas' torturous activities. To interpret the term otherwise would be to misconstrue the meaning of "acquiescence," the dictionary definition of which is "silent or passive assent." *The Oxford Universal Dictionary* 17 (3d ed. 1955). Accordingly, we consider that a government's inability to control a group ought not lead to the conclusion that the government acquiesced to the group's activities.

We note that we have granted asylum to applicants who feared persecution at the hands of nongovernmental entities where the applicant demonstrated that government authorities were unable to provide protection from the would-be persecutors. *See, e.g., Matter of Kasinga*, 21 I&N Dec. 357 (BIA 1996) (holding that an applicant who feared female genital mutilation by members of her family, and who proved that neither the police nor the government would protect her, merited asylum); *Matter of Villalta*, 20 I&N Dec. 142, 147 (BIA 1990) (holding that an applicant who feared persecution by a paramilitary "Death Squad" deserved asylum where the Salvadoran Government "appear[ed], at a minimum, to have been unable to control" the death squads). However, Article 3 of the Convention Against Torture does not extend protection to persons fearing entities that a government is unable to control. In fact, the United Nations Committee Against Torture has stated that Article 3 does not provide protection in cases where

pain or suffering is inflicted by a nongovernmental entity that is not acting by or at the instigation, consent, or acquiescence of a public official.[1]  *See G.R.B. v. Sweden*, Comm. No. 83/1997, CAT/C/20/D/83/1997 (1997) (holding that the applicant, who asserted a fear of torture by both the Sendero Luminoso and government authorities in Peru, failed to establish a breach of Article 3, because a state party is not prohibited under the Convention from expelling a person "who might risk pain or suffering inflicted by a non-governmental entity").

## B.  "Activity Constituting Torture"

In addition, we consider that the term "activity" that appears in the definition of "acquiescence" does not simply refer to general violence; rather, the referenced "activity" must be the very torture that the applicant claims to fear. The Committee Against Torture has observed that the existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his or her return to that country. *See G.R.B. v. Sweden*, *supra*. Specific grounds must exist that indicate the individual would be personally at risk. *Id.*; *see also K.N. v. Switzerland*, Comm. No. 94/1997, CAT/C/20/D/94/1997 (1997) (holding, in a case involving a Tamil and Christian Sri Lankan national who was forced to work for the Tamil Tigers and who was sought by the Sri Lankan Army, that the existence of mass human rights violations in a country does not suffice to prove that a particular alien will personally be subject to torture).

## C. Conclusion

The respondent has neither alleged nor demonstrated that the Colombian Government's failure to protect its citizens is the result of deliberate acceptance of the guerrillas' activities. In fact, the record in the present case reflects that the Government actively, although to date unsuccessfully, combats the guerrillas. Consequently, we find that the respondent has not proven that Colombian officials acquiesce to the types of activities that the respondent fears he would suffer at the hands of the guerrillas.

---

[1]The United Nations Committee Against Torture is a monitoring body for the implementation and observance of the Convention Against Torture. Convention Against Torture, *supra*, arts. 17-22. The United States recognizes the Committee but does not recognize its competence to consider cases brought by one state party against another or cases brought by an individual against a state party. *See* 136 Cong. Rec. at S17,492. We therefore consider the Committee's opinions to be advisory only.

Moreover, the evidence of general conditions of violence presented by the respondent does not establish that an individual in his circumstances would be subjected to torture if he returned to Colombia. We therefore find that the respondent has failed to demonstrate prima facie eligibility for relief under Article 3 of the Convention Against Torture.[2]

## V. CONCLUSION

In light of the foregoing, we conclude that the respondent has failed to demonstrate eligibility for withholding of removal under section 241(b)(3)(B) of the Act or for protection under Article 3 of the Convention Against Torture. Accordingly, his motion to reopen will be denied.

**ORDER:** The respondent's motion to reopen is denied.

*CONCURRING OPINION*:  Gustavo D. Villageliu, Board Member

I respectfully concur.

I respectfully concur in the result of this case, agreeing with the denial of the motion. However, I also agree with many of the points expressed by Chairman Schmidt in his concurring and dissenting opinion and therefore write separately to discuss my concerns.

Like Chairman Schmidt, I am troubled by the majority's reliance on *Matter of T-M-B-,* 21 I&N Dec. 775 (BIA 1997)*,* without noting that the case was recently reversed by *Borja v. INS*, 175 F.3d 732 (9th Cir. 1999). As the quasi-judicial body entrusted with the United States Attorney General's discretion and authority over immigration cases pursuant to 8 C.F.R. § 3.1 (2000), we have a duty to disclose the true status of our precedents that have been rejected by the reviewing courts. *See* The Harvard Law Review Association, *The Bluebook: A Uniform System of Citation*, Rules 10.7-10.7.1, at 66-67 (16th ed. 1996).

I also agree with Chairman Schmidt's criticism of the narrow interpretation prescribed by the majority for determining who may be considered a "public official or other person acting in an official capacity" for purposes of 8 C.F.R. § 208.18(a)(1) (2000).  The only thing I would add is that we have already stated that, for immigration purposes, the term "government" is not limited to political units we recognize as valid. Rather, it includes "a political organization that exercises power on behalf of the people subjected to its jurisdiction." *Matter of Linnas,* 19 I&N Dec. 302, 307 (BIA 1985).

---

[2]In view of our finding that the respondent has failed to establish eligibility for relief, we need not address at this time the question whether kidnaping per se constitutes torture.

According to the documents submitted by this respondent, the Colombian rebels control approximately 40 percent of that country's territory, and those rebels may well be considered part of a government participating or acquiescing in the torture of an individual within its territory for purposes of 8 C.F.R. §§ 208.18(a)(1) and (7).

However, none of the evidence submitted in this case suggests any likelihood that the Colombian guerrillas would be inclined to torture this particular respondent. He has been in the United States since he was a young child and has had little contact with his native country. The respondent's motion lacks any individualized reason why his case is different from that of anyone else facing deportation to Colombia. Consequently, despite my disagreement with the narrow reading of the regulation espoused by the majority, I nonetheless concur in its denial of the motion to reopen.

*CONCURRING AND DISSENTING OPINION*:  Paul W. Schmidt, Chairman; in which John Guendelsberger and Anthony C. Moscato, Board Members, joined

I respectfully concur in part and dissent in part.


# I. WITHHOLDING OF REMOVAL

I agree with the majority that the respondent's robbery conviction is a particularly serious crime under *Matter of S-S-*, 22 I&N Dec. 458 (BIA 1999).  I find it unnecessary to reach the "on account of" question. Also, I would not rely on *Matter of T-M-B-*, 21 I&N Dec. 775 (BIA 1997), which was reversed by *Borja v. INS*, 175 F.3d 732 (9th Cir. 1999).


# II. REMAND TO APPLY UNDER ARTICLE 3 OF THE
## CONVENTION AGAINST TORTURE

I disagree with the majority's denial of the respondent's motion to reopen to apply for deferral of removal under Article 3 of the United Nations Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").  The respondent was unable to make such an application at the time of his hearing because the regulations granting the Executive Office for Immigration Review jurisdiction over applications under the Convention Against Torture were not then in effect.

This motion to reopen is the respondent's first, and only, opportunity to apply under the Convention Against Torture. I would grant the motion and allow the respondent to request protection under Article 3 of the Convention Against Torture and the implementing regulations before the Immigration Judge. *See* 8 C.F.R. §§ 208.16-208.18 (2000).

The motion to reopen may be granted if the respondent establishes a prima facie case of eligibility for relief under the Convention Against Torture. A prima facie case is one where the respondent has demonstrated a reasonable likelihood of success on the merits, so as to make it worthwhile to develop the issues at a hearing. *Matter of L-O-G-*, 21 I&N Dec. 413 (BIA 1996).

The respondent claims that, if returned to Colombia, he would be subject to torture by guerrilla groups that effectively control portions of the country and operate with impunity throughout the country. He supports his claim with documentation indicating that the United States Department of State has characterized Colombia as probably the most dangerous country in the world. It is, according to the Department of State's travel warning, a country where "narcotraffickers, guerrillas, paramilitary groups and other criminal elements" engage in rampant, aggravated violence.

The respondent's documentation, read in its entirety, does not suggest that such violence is limited to United States citizens or other foreign nationals. Rather, the supporting evidence indicates that large segments of the Colombian populace may be at substantial risk. The respondent's argument that, as an individual associated with the United States who has family in the United States, he may face a heightened risk of mistreatment is plausible in light of the evidence presented.

The regulations also require an applicant for protection under the Convention Against Torture to show that it is more likely than not that he will suffer torture "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). The meaning of this language is not transparent.

For example, in a recent ruling, the United Nations Committee Against Torture, the international body whose rulings are cited approvingly by the majority, found that the warring factions in Somalia fall within the phrase "public official[s] or . . . other person[s] acting in an official capacity" as used in the Convention Against Torture. *See Sadiq Shek Elmi v. Australia*, Comm. No. 120/1998, CAT/C/22/D/120/ 1998 (1998). In doing so, the Committee flatly rejected Australia's arguments to the contrary.

At this point, it is unclear whether the situation of the various factions committing violent acts in Colombia is analogous to that of the warring factions in Somalia. There are both potential similarities and differences. There is also an open question as to when, if ever, the loss of internal control by an existing government can amount to "acquiescence" that invokes the protections of the Convention Against Torture. I do not find that question to be

definitively answered by the sources cited by the majority.

The issue whether the respondent's situation fits within Article 3 of the Convention Against Torture requires factual determinations about conditions in Colombia and the respondent's own situation considered in the context of international legal principles. We have little United States jurisprudence to guide us in this area. Before deciding such important and potentially far-reaching issues, we should have a fully developed record and the benefit of the Immigration Judge's informed ruling on the positions of the parties.

The respondent has established a reasonable likelihood of success on the merits so as to make it worthwhile to develop the issues at a hearing under *Matter of L-O-G-*, *supra*. His motion to reopen and remand should therefore be granted. Consequently, I respectfully dissent from the decision to deny the motion.

*DISSENTING OPINION*: Lory Diana Rosenberg, Board Member

I respectfully dissent.

I disagree with the reasoning and the result reached by the majority. I agree fully, however, with the statement in the separate opinion of concurring Board Member Villageliu, criticizing the majority for refusing to properly cite *Matter of T-M-B-,* 21 I&N Dec. 775 (BIA 1997)*,* as having been squarely overruled by the United States Court of Appeals for the Ninth Circuit in *Borja v. INS*, 175 F.3d 732 (9th Cir. 1999).

I also agree with the analysis provided by Chairman Schmidt regarding the need for an evidentiary hearing to determine the respondent's potential eligibility for protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46, 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("Convention Against Torture").

I write separately to emphasize my disagreement with the majority's resolution of the substantive merits of the respondent's motion to reopen. In rushing to deny the respondent both withholding of removal and deferral of removal in the context of a motion to reopen, the majority usurps the role of the finder of fact and applies untested interpretations of the governing law under the Convention Against Torture.

The respondent is a 19-year-old young man who has lived in the United States as a lawful permanent resident for over 18 years, since he was 5 or 6 months old. Although my colleagues might not deem these facts to have any bearing on the decision we issue today, I believe that they are significant. We are obliged to follow the statute, to be sure. The statute provides that an alien who has been convicted and sentenced to imprisonment for at least 1

year for the crime of robbery, where force is an element of the crime or the crime is a felony involving a substantial risk that force will be used in the commission of the crime, is deportable and subject to removal. *See* sections 101(a)(43)(F), 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. §§ 1101(a)(43)(F), 1227(a)(2)(A)(iii) (Supp. II 1996). Nevertheless, while the respondent might be subject to removal, I would not so easily dismiss his motion for withholding and deferral of removal.

While there may be a propensity to deny a claim for withholding or deferral of removal because it is made by a criminal alien who is ineligible for other forms of relief for removal, I caution against such a response. I also note that heightening the standard for reopening and denying a hearing under the Convention Against Torture is not the proper mechanism to register one's disagreement with the availability of protection to such aliens.

As implemented by the United States, the Convention Against Torture imposes stringent requirements on the conduct of various actors. Specifically, regulations implementing Article 3 of the Convention refer to pain and suffering that is "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a) (2000); *see also* Deborah E. Anker, *Law of Asylum in the United States* 465, 481-85 (3d ed. 1999). This interpretation arguably is a more broad and liberal one than that provided in the Convention Against Torture itself. *Id*. It encompasses both actual knowledge and "willful blindness" by public officials, as bases for a finding that torture is more likely than not based on acquiescence. *See* Report of the Committee on Foreign Relations, S. Exec. Rep. No. 101-30, at 9 (1990). The interpretation does not expressly exempt actions by entities outside a government's control. Evidence of either form of acquiescence by a public official will support a finding that torture is more likely than not to occur.

Before rejecting a request for protection under the Convention Against Torture, I believe it prudent to allow such a claim to be fully explored in an evidentiary hearing. Accordingly, I agree fully with the separate opinion of Chairman Schmidt, with regard to the majority's error in denying the respondent's motion to reopen to allow him to apply for protection under Article 3 of the Convention Against Torture.

In addition, I believe that it is important to consider the respondent's claim for withholding of removal according to our precedents. These precedents require that, in the course of exercising the discretion extended to the Attorney General under the statute, we engage in a case-by-case adjudication. *See Matter of S-S-*, 22 I&N Dec. 458 (BIA 1999). I find it improper to invoke our precedents in withholding cases categorically, as I believe the majority has done here. *Cf. id.*

I do not disagree that the respondent has been convicted of an offense that is an aggravated felony. However, I do believe that the statute and our interpretation of it require that we determine whether the respondent has

been convicted of a crime that is a particularly serious crime. *See id.* That is a question that should be determined in the context of an evidentiary hearing. Even though we have determined that certain robbery convictions amount to "particularly serious crimes," this does not mean that all robbery convictions are such crimes.

I disagree with the majority's approach to our appellate adjudication, and I question the reasons for it, expeditious though it may appear to be. We are charged with issuing precedent opinions that provide some guidance to Immigration Judges, the Immigration and Naturalization Service, and the public. In my view, this opinion provides no such guidance. At best, it provides a questionable recipe to deny relief to some criminal aliens. I do not believe that denying relief is our charge, and I dissent.