Carlos JARAMILLO–MERTINEZ,
Petitioner

v.

ATTORNEY GENERAL OF
the UNITED STATES,
Respondent.

No. 06–2432.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) Sept. 25, 2007.

Filed: Oct. 5, 2007.

934

John D. Perez, Perez, Perez & Perez, Newark, NJ, for Petitioner.

Robert A. Zauzmer, Peter D. Hardy, Office of United States Attorney, Philadelphia, PA, Jonathan Potter, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before: McKEE, BARRY, and FISHER, Circuit Judges.

## OPINION

BARRY, Circuit Judge.

Carlos Jaramillo, a native and citizen of Colombia, petitions for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal of an Immigration Judge's ("IJ") denial of his application for withholding of removal and protection under the Convention Against Torture ("CAT"). For the following reasons, we will deny the petition.

## I.

Jaramillo entered the United States on November 19, 1998 as a visitor for pleasure authorized to remain in the country until April 18, 1999. Having failed to leave the country by then, on July 2, 2003, he was served with a Notice to Appear, which alleged that he was removable as a nonimmigrant who had remained in the United States for a period of time longer than permitted, in violation of section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). Jaramillo conceded the charge but applied for withholding of removal and protection under the CAT.

On September 17, 2004, the IJ held a hearing on his application. Jaramillo testified that in 1998 members of the Colombian Revolutionary Armed Forces ("the FARC"), an illegal, armed terrorist organization, approached him on his family's farm near Jamodin, Colombia, and demanded money. They also threatened to make him "a military objective" if he did not abandon the land. Jaramillo left the farm and thereafter lived in Armenia and Bogota, Colombia, searching for work. Unable to find work and fearful of the FARC, he obtained a visa to the United States.

Following the hearing, the IJ issued a decision denying relief. The IJ noted that the Country Reports of the U.S. Department of State substantiate that the FARC is dangerous, but ultimately concluded, although crediting Jaramillo's subjective fear, that he had not carried his burden of showing a clear probability of persecution based on a prescribed ground necessary for withholding of removal. In addition, the IJ determined that Jaramillo had failed to demonstrate the likelihood of torture necessary for CAT relief.

On March 27, 2006, the BIA dismissed the appeal, affirming the IJ's conclusion that because Jaramillo had failed to show that he would be persecuted on account of an enumerated ground if he returned to Colombia, his withholding claim should be denied. The BIA also affirmed the denial of the CAT claim, agreeing with the IJ that Jaramillo had failed to establish that it is more likely than not that he would be tortured in Colombia.

## II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). "Where, as here, the BIA issued a decision on the merits and not simply a summary affirmance, we review the BIA's, not the IJ's, decision." *Lie v. Ashcroft*, 396 F.3d 530, 534 n. 3 (3d Cir.2005). We treat factual findings as conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## III.

Jaramillo claims, first, that substantial evidence establishes his eligibility for CAT relief because the Colombian government "is unable or unwilling to protect its citizens" from the FARC. Petr.'s Br. 6. Even if this were true, however, Jaramillo has not met the statutory requirements of the CAT.

To be eligible for CAT relief, Jaramillo must prove that he will more likely than not be tortured if removed to Colombia. *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 592 (3d Cir.2003). Under the relevant regulations, "torture" means "severe pain or suffering" inflicted "at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to pre-

vent such activity." 8 C.F.R. § 208.18(a)(7). Acquiescence is not limited to situations where public officials have actual knowledge of torturous activity.

President Reagan submitted the CAT to the Senate for advice and consent on May 23, 1988. *See* S. Exec. Rep. 101–30, at 35 (1990). He proposed seventeen conditions, including an understanding that acquiescence meant that the "public official, prior to the activity constituting torture, [must] have *knowledge* of such activity and thereafter breach his legal responsibility to intervene to prevent such activity." *Id.* at 15 (emphasis added). After reviewing the proposed conditions, however, the Senate Foreign Relations Committee was concerned that "knowledge" was too limiting and "created the impression that the United States was not serious in its commitment to end torture worldwide." *Id.* at 4. Two years later, the first Bush administration submitted a revised list of proposed conditions, addressing these concerns. *Id.* The revised list contained an understanding of the definition of "acquiescence" that required that an official have only "awareness" of the torturous activity, rather than knowledge. *Id.* at 9. The Senate Foreign Relations Committee reported that this change was intended to make it clear that both actual knowledge and willful blindness fall within the definition of the term "acquiescence." *Id.* The Senate adopted a resolution of advice and consent to ratification of the Convention on October 27, 1990, subject to the revised reservations, understandings, and declarations. *See* 136 Cong. Rec. 36,198 (1990).

Government participation in and actual knowledge of torture is thus certainly sufficient but not necessary to establish acquiescence under the CAT; evidence that officials turn a blind eye to torturous conduct is also sufficient. *See Silva–Rengifo v. Attorney Gen.*, 473 F.3d 58, 65 (3d Cir. 2007) (adopting "willful blindness" test for

acquiescence and rejecting "actual knowledge").

Jaramillo argues that his situation is analogous to that in *Zheng v. Ashcroft,* 332 F.3d 1186 (9th Cir.2003), a case from the Ninth Circuit granting CAT relief where government officials were willfully blind to tortuous conduct. Zheng was a Chinese citizen who arrived in Guam with the assistance of snakeheads but later testified against them in a criminal proceeding in United States. One of the snakeheads made direct threats against Zheng's life, and Zheng sought protection under the CAT. In order to establish the requisite official acquiescence, Zheng testified that he had witnessed snakeheads bribe Chinese police with cigarettes before filling their boats with passengers. While the IJ found that the Chinese government was "not willing to interfere" with the snakeheads' conduct and thus had acquiesced in it, *id.* at 1191, the BIA relied on *Matter of S–V–,* 22 I. & N. Dec. 1306 (BIA 2000), a BIA decision which predicated CAT relief on actual knowledge of torturous activity by government officials. The Ninth Circuit reversed, rejecting the actual knowledge standard of torturous activity in *Matter of S–V–,* and clarified that acquiescence includes willful blindness. *Zheng,* 332 F.3d at 1188–89. Just recently, we expressly agreed with the Ninth Circuit, concluding in *Silva–Rengifo* that the BIA's reading of acquiescence in *Matter of S–V–* was too narrow and held that "acquiescence to torture requires only that government officials remain willfully blind to tortuous conduct and breach their legal responsibility to prevent it." *Silva–Rengifo,* 473 F.3d at 70.

■ The Colombian government, in contrast to the Chinese government as reported in *Zheng,* however, has not been willfully blind but rather has intervened against guerilla groups. As the BIA stated, "the Colombian government is actively, though unsuccessfully, attempting to control the FARC." App. at 3. Indeed, the evidence Jaramillo submitted demonstrates that the Colombian government has continuously sought to oppose the FARC, not acquiesce in its crimes.

■ Additionally, even if the FARC's activities amounted to torture in which the government acquiesced, Jaramillo has not demonstrated that it is "more likely than not" that he, himself, will be tortured if returned to Colombia. 8 C.F.R. § 1208.16(c)(2). The determination that Jaramillo did not prove a likelihood of torture is a determination which we review for substantial evidence. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Here, there is no suggestion that the FARC's violent actions are sufficiently frequent to compel the conclusion that Jaramillo would more likely than not suffer torture upon removal to Colombia. Moreover, unlike the petitioner in *Zheng,* Jaramillo is not known to the FARC as a person who testified or otherwise sought to thwart its actions. Rather, he complied with its orders by abandoning his family's farm, and none of his family members who remain in Colombia has suffered harm.

Finally, Jaramillo cites two Ninth Circuit asylum cases for the proposition that when reviewing CAT claims, corroborative evidence should not be required and, thus, we should rely only on his testimony. This argument, however, flies in the face of the implementing regulations to the CAT. Under 8 C.F.R. §§ 208.16(c)(3) and 208.17(a), "[t]he standard for relief has no subjective component, but instead requires the alien to establish ... by objective evidence that he is entitled to relief." *Sevoian v. Ashcroft,* 290 F.3d 166, 175 (3d Cir. 2002). The objective evidence to be considered in evaluating a CAT claim includes "[e]vidence of past torture inflicted upon the applicant;" "[e]vidence of gross, fla-

grant or mass violations of human rights within the country of removal;" and "[oth]er relevant information regarding conditions in the country of removal." *See* 8 C.F.R. §§ 208.16(c)(3), 208.17(a). The record here is bereft of such evidence.

Accordingly, we conclude that Jaramillo is not entitled to protection under the CAT.

## IV.

Jaramillo also argues that he satisfies the statutory criteria for withholding of removal. We find, however, that he has not demonstrated that he faced persecution in the past or has established a likelihood of future persecution.

To qualify for withholding of removal, Jaramillo must show that his "life or freedom would be threatened in [Colombia] because of [his] race, religion, nationality, membership in a particular social group or political opinion." 8 U.S.C. § 1231(b)(3)(A). We have interpreted this standard as requiring an applicant to demonstrate that, because of one of the enumerated grounds, "it is more likely than not that he will face persecution if he is deported." *Li Wu Lin v. INS*, 238 F.3d 239, 244 (3d Cir.2001). The determination of whether a person "has suffered from persecution or whether that individual has a well-founded fear of persecution is factual and thus is entitled to deference." *Neng Long Wang v. Gonzales*, 405 F.3d 134, 138 (3d Cir.2005).

Jaramillo argues that he was persecuted by the FARC on account of being a farmer and landowner. Even if his alleged status of farmer and landowner would qualify him as a member of a particular social group, however, the determination that he has not shown past persecution is supported by substantial evidence.

A particular social group refers to a group of people who share a common, immutable characteristic, a characteristic that they cannot change or should not be required to change because it is fundamental to their identities or consciences. *See In re Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985); *Lukwago v. Ashcroft*, 329 F.3d 157, 171 (3d Cir.2003) (accepting BIA's construction of particular social group). While the BIA has taken the position that wealth itself does not fall within one of the enumerated categories, *see In re V–T–S–*, 21 I. & N. Dec. 792, 798–99 (BIA 1997), there is some support for the proposition that certain manifestations of property holding may constitute the type of immutable characteristic sufficient to establish "a particular social group" under the BIA's definition of that term. *See In re Acosta*, 19 I. & N. Dec. at 233 ("The shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past experience such as former military leadership or land ownership."). The Seventh Circuit has explicitly distinguished between wealth and landownership in finding the existence of a particular social group. *Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 672 (7th Cir.2005) ("This group is not defined merely by wealth, a characteristic that standing alone was rejected by the Board ... but by their ownership of land, their social position as cattle farmers, and their education.").

The land Jaramillo farmed, however, originally belonged to his father. After his father's death, ownership passed to his mother, not to him. Furthermore, after the FARC threatened him by demanding money and ordering him to cease farming, Jaramillo sold his cattle and moved away.

But even if Jaramillo belongs to a particular social group as a farmer and landowner, his claim for withholding of removal fails on the ground that he has not established that he was persecuted or that he likely will be. Persecution is an "extreme concept that does not include every sort of

treatment our society regards as offensive." *Fatin v. INS,* 12 F.3d 1233, 1243 (3d Cir.1993). It means "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Id.* at 1240.

■ The single incident in 1998 Jaramillo has described simply does not rise to the level of past persecution. Moreover, in the words of the BIA, Jaramillo has not "produce[d] specific, detailed facts establishing that the FARC would single him out for persecution more than seven years after leaving the country." App. at 3. Jaramillo's wife and children have been living in Colombia for the past several years without incident, and his mother, who owns the land, has never been threatened by the FARC. After the 1998 incident, Jaramillo moved to other cities in Colombia, where he appears to have been safe from the FARC's attentions.

In sum, the record suggests that while Colombia "is in a deteriorating situation politically ... [and] having difficulty in controlling paramilitary groups and controlling guerilla groups," App. at 12, Jaramillo has not established that he himself has a well-founded fear of persecution.

## V.

Finally, Jaramillo contends that he was denied due process because the IJ failed to conduct a full and fair hearing on his claim of future persecution based upon his membership in a particular social group and that the BIA should have remanded the claim so that he could receive a full hearing. We reject this contention.

■ "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Abdulai v. Ashcroft,* 239 F.3d 542, 549 (3d Cir.2001). "In adjudicative contexts ... [a]n alien: 1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to

him or her; 2) must be allowed to make arguments on his or her own behalf; and 3) has the right to an individualized determination of his [or her] interests." *Id.* The IJ based his decision on the record and issued an individualized determination after allowing Jaramillo to submit argument on his behalf, concluding that "[t]he record before this Court does not indicate any kind of clear probability of possible harm to the respondent on one of the prescribed grounds previously mentioned." App. at 13. There was no need for the BIA to remand then, and there is no need to do so now.

## VI.

For the foregoing reasons, we will deny the petition for review.