JULIA SMITH GIBBONS, Circuit Judge,
dissenting.
Because we cannot ascertain that the BIA applied the correct standard for torture through “acquiescence,” pursuant to 8 C.F.R. § 1208.18(a)(7), and because the proper course in such instances is to remand, I respectfully dissent.
As the majority correctly notes, “acquiescence” does not require “willful acceptance” by a public official; “willful blindness” will suffice. See Amir v. Gonzales, 467 F.3d 921, 927 (6th Cir.2006). As the majority also notes, remand to the BIA is appropriate where we are unable determine whether the BIA has applied the correct legal standard. See Tran v. Gonzales, 447 F.3d 937, 944 (6th Cir.2006). Here, although the BIA did not mention the “willful blindness” standard and cited a case that provides the wrong standard, the majority nonetheless strains to conclude that the BIA applied the correct standard. I am unpersuaded by the majority’s reasoning.
First, the majority reads this court’s decision in Amir v. Gonzales too narrowly. In Amir, this court explained:
In the case at bar, the IJ applied In Re S-V- 22 I. & N. Dec. 1306 (2000), to Amir’s CAT claim. In S-kj the BIA held that a petitioner “must do more than show that the officials are aware of the activity but are powerless to stop it. He must demonstrate that ... officials are willfully accepting of the guerillas’ torturous activities.” Id. at 1312 (emphasis supplied). Because Amir did not show that the Indonesian government was willfully accepting of the fanatical Muslim activity, the IJ dismissed the CAT claim without further analysis. We join the Ninth and Second Circuits in holding that In Re S-V- directly conflicts with Congress’s clear intent to include “willful blindness” in the definition of “acquiescence.” ... Today we explicitly hold that the IJ’s reliance on In Re S-V- was manifestly contrary to the law.
467 F.3d at 927 (emphasis added). In other words, the Amir court remanded not only because the IJ had erroneously applied the “willful acceptance” standard, but because the IJ had not analyzed whether public officials were willfully blind. Id. The BIA’s analysis in this case also suffers from the latter deficiency. Despite the IJ’s findings of “numerous instances where the government of Romania is willfully blind to severe mistreatment of Roma citizens by its own police,” the BIA made no mention of the possibility of acquiescence through willful blindness.
Second, contrary to the majority’s suggestion, the BIA’s citation of Ali v. Reno, *427 237 F.3d 591, 597 (6th Cir.2001), tells us little. The BIA cited Ali for its recognition of the regulatory definition of “torture” pursuant to 8 C.F.R. § 1208.18(a)(1). To be sure, the Ali court noted later in its opinion, while interpreting “acquiescence,” that the legislative history of § 1208.18(a)(7) suggests that “willful blindness” constitutes “acquiescence.” 237 F.3d at 597. Had the BIA cited Ali for its definition of “acquiescence,” we might surmise that the BIA had read to this later point in the Ali decision and had willful blindness in mind when it analyzed Nerghes’s claim. But while interpreting “acquiescence,” the BIA only cited Matter of S-V-, 22 I & N Dec. 1306, 1312 (BIA 2000), which contains the definition of “acquiescence” that is now “manifestly contrary to law.” Amir, 467 F.3d at 927. The majority suggests that “the quoted language” from the BIA’s decision is from the same paragraph in which the Ali court established that “acquiescence” includes “willful blindness.” Majority Op. at 424. Yet the quoted language from 8 C.F.R. § 1208.18(a)(1) appears in a different paragraph, 30 lines (including a footnote) before the Ali court first mentions “willful blindness.” 237 F.3d at 597. The majority’s charitable reading of the BIA’s reference to Ali seems unjustified.
Finally, the majority’s suggestion that the BIA has sometimes erred more egregiously than it did in this case does not resolve whether remand is appropriate here. The majority is correct that the BIA need not recite the words “willful blindness” whenever “acquiescence of a public official” is at issue. For example, we would not expect to see reference to the “willful blindness” standard when the issue was whether a perpetrator was a “public official.” See Cruz-Funez v. Gonzales, 406 F.3d 1187, 1192 (10th Cir.2005) (concluding that IJ did not err in finding existence of a “private vendetta” rather than “acquiescence of a public official ”) (emphases added). But where acquiescence itself is at issue, we might expect, if not an explicit reference to the “willful blindness” standard, at least a clear indication that the BIA applied the correct standard. Here, the IJ specifically found acquiescence through “willful blind[ness]” by the Romanian Government. Yet, because the BIA reversed the IJ’s CAT determination with no reference to the proper standard (and one citation to a dubious standard), we do not know whether the BIA also considered the “willful blindness” standard. The BIA’s decision here, as judged by its own opinion, in my view just as likely derives from application of an improper standard as from application of a proper one.
For these reasons, I would remand to the BIA with instructions to analyze Nerghes’s CAT application under the “willful blindness” standard.