

Villanova University School of Law Digital Repository

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-14-2009

# Mendez v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4678

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Mendez v. Atty Gen USA" (2009). *2009 Decisions*. Paper 2039.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/2039

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-4678
_____

CARLOS JULIO MENDEZ,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A44 701 931
Immigration Judge:  Frederic G. Leeds

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 6, 2009

Before: FISHER, JORDAN and VAN ANTWERPEN, <u>Circuit Judges</u>

(Opinion filed: January 14, 2009)

_____

OPINION
_____

PER CURIAM

        Carlos Julio Mendez petitions for review of an order of the Board of Immigration

Appeals (BIA), which affirmed the Immigration Judge's (IJ's) decision ordering his

removal and denying his application for deferral of removal under the United Nations Convention Against Torture (CAT). For the reasons that follow, we will grant the petition for review and remand for further proceedings.

Mendez, a native and citizen of the Dominican Republic, entered the United States illegally in 1988. He adjusted his status to permanent resident alien through his U.S. citizen wife in 1993 or 1994. Mendez was later placed in removal proceedings because he was convicted of a drug trafficking crime. At an immigration hearing, Mendez claimed that the prosecutor and FBI told him he would not be deported if he cooperated. Mendez conceded he was removable, but applied for relief under the CAT, claiming that he would be detained and tortured in prison in the Dominican Republic, and that if he were to be released from prison there, he would be tortured by Dominican citizens (people "high up" in the military) who were family members of a person he testified against in the United States.

The IJ denied relief. The IJ noted that Mendez had not provided any proof that he would be imprisoned if he were to be returned to the Dominican Republic. A.R. 20. The IJ found that, in any event, to the extent he claimed he would be tortured due to prison conditions in the Dominican Republic, that claim was foreclosed by this Court's decision in Auguste v. Ridge, 395 F.3d 123 (3d Cir. 2005), as the conditions in Haiti described in Auguste were not distinguishable from those reported in the United States Department of State's 2005 country report for the Dominican Republic. To the extent he was claiming

2

he would be tortured by citizens in the Dominican Republic, the IJ stated that CAT relief is not available for those who fear torture by individuals not part of the government, and Mendez had not provided any proof that any individuals would be looking for him in the Dominican Republic.  A.R. 21.

As to Mendez's claim that the FBI had promised that he would not be deported, the IJ found the only evidence backing Mendez's claim was a statement in a judgment entered by the United States District Court for the Southern District of New York, related to a drug conviction in New York, which states:  "In view of his cooperation with the U.S. Attorney and danger facing him if deported as a result of his cooperation, the Court recommends to the Immigration and Naturalization Service (INS) that the Defendant not be deported."  A.R. 112.[1]  The IJ noted that this was just a recommendation, and that the Department of Homeland Security had exercised its prosecutorial discretion and had decided not to follow through on the recommendation.  A.R. 24.

The BIA dismissed Mendez's appeal, agreeing with the IJ's conclusion that Mendez had not established that it was more likely than not that he would be detained and intentionally tortured in the Dominican Republic as a criminal deportee.  A.R. 2.  The BIA noted that the 2005 country report did not suggest that someone in Mendez's

---

[1] It appears that this is not the conviction with which Mendez was charged in the Notice to Appear, as the Notice refers to a conviction in the United States District Court, Northern District of Ohio.  A.R. 226 (notice to appear); A.R. 116-22 (Judgment in Ohio case).

3

situation would be targeted by authorities in the Dominican Republic.  Id.  The BIA found

no merit to Mendez's argument that the IJ erred by failing to honor his agreement with

the U.S. Attorney's Office not to deport him.  The BIA noted that there was no evidence

of such an agreement in the record, and stated, citing United States v. Igbonwa, 120 F.3d

437, 444 (3d Cir. 1997), that the recommendation by the federal sentencing judge in New

York was not binding on the Immigration Court.  Mendez, proceeding pro se, filed a

timely petition for review with this Court.

In his brief, Mendez argues that the Department of Homeland Security violated the

contract he had with the United States Attorney's Office not to deport him.  He also

argues that the BIA misapplied Auguste, as his situation is distinguishable.  The

Government argues that we lack jurisdiction to consider Mendez's claims because he was

convicted of an aggravated felony and he raises "no serious legal or Constitutional issue

with regard to his immigration proceedings . . . ."  Respondent's Brief at 8.

Under section 242(a)(2)(C) of the Immigration and Nationality Act (INA) [8

U.S.C. § 1252(a)(2)(C)], we lack jurisdiction to review "any final order of removal

against an alien who is removable by reason of having committed," inter alia, a controlled

substance violation covered in INA § 212(a)(2).  However, the REAL ID Act of 2005

restored direct review of constitutional claims and questions of law presented in petitions

for review of final removal orders.  See INA § 242(a)(2)(D) [8 U.S.C. § 1252(a)(2)(D)];

Papageorgiou v. Gonzales, 413 F.3d 356, 358 (3d Cir. 2005).  Because Mendez has been

4

convicted of a controlled substance violation, in our review we may consider only constitutional issues, pure questions of law, and issues of application of law to uncontested facts. See Kamara v. Attorney General, 420 F.3d 202, 211 (3d Cir. 2005). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and the BIA." Chen v. Ashcroft, 376 F. 3d 215, 222 (3d Cir. 2004).

Mendez has presented legal questions for our review. Mendez claims that the BIA erred in failing to honor a contract between him and the United States Attorney regarding his removal, and he also argues that the BIA incorrectly applied the law to his CAT claim. Because Mendez proceeds pro se, we will liberally construe the arguments in his brief. Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Mendez's CAT claim has essentially two components: first, that he will be imprisoned upon his return to the Dominican Republic and that harsh conditions in prison will constitute torture; and second, that Dominican authorities "will not protect me against people I testified against when I testified on behalf of the United States to bring about criminal convictions of Dominicans . . . ." Petitioner's Br. at 2. As to the first component, we agree with the IJ and BIA that the deplorable prison conditions in the Dominican Republic do not amount to torture under the law. In Auguste, we held that "for an act to constitute torture, there must be a showing that the actor had the intent to commit the act as well as the intent to achieve the consequences of the act, namely the

5

infliction of the severe pain and suffering." 395 F.3d at 145-46. We do not agree with Mendez's assertion that he has proven that he would be imprisoned and that Dominican authorities would "intentionally not use governmental resources to provide me with food and other basic necessities." See also, Pierre v. Attorney General, 528 F.3d 180, 190 (3d Cir. 2008) ("[A] petitioner cannot obtain relief under the CAT unless he can show that his prospective torturer will have the goal or purpose of inflicting severe pain or suffering.").

The IJ's and BIA's handling of the second component, however, appears to have been based on an erroneous assumption that the decision by the Department of Homeland Security to proceed with Mendez's removal meant that a United States District Court's recommendation against removal could not be considered. The IJ, in his oral ruling against Mendez, correctly stated that, "[t]o qualify for protection under the Convention against Torture, 'specific grounds must exist that indicate an individual will be personally at risk[.]'" I.J. Ruling Tr. at 3, A.R. 17 (quoting Matter of S-V-, 22 I. & N. Dec. 1306, 1313 (B.I.A. 2000)). The IJ went on to say, however, that Mendez "has demonstrated no such specific grounds." Id. The IJ said that his decision against Mendez was not based on any credibility determination, that it was instead based on "lack of proofs as to some of the statements made by [Mendez.]" Id. Most of the IJ's oral ruling bears on whether conditions in a Dominican prison would amount to torture. However, turning to whether Mendez would face anything amounting to torture outside of prison, the IJ referred to the District Court's recommendation against deportation, which undermines his "lack of

6

proofs" comment.

Perhaps through Mendez's own fault, the IJ did not receive the District Court's sentencing statement until the day of the removal decision. I.J. Ruling Tr. at 9, A.R. 35. Yet, rather than take the time to gather information regarding the District Court's extraordinarily pointed statement of risk, the IJ simply relied on the representation of the government lawyer at the removal hearing to say, "[a]pparently this case has been in the Immigration Courts now for almost four years[,]" and the government had tried to "flush out [sic] this issue and make a determination of what recommendations the U.S. Attorney had previously [made]." Id. The IJ then dismissed the District Court's conclusion that Mendez would be at serious risk if deported, saying, "[u]nfortunately for [Mendez], this Court is only faced with an indication of a recommendation, and this is subject to prosecutorial discretion, and not something that this Court would have the authority to make a decision in relation to . . . ." Id. at 9-10, A.R. 35-36.

There are at least two troublesome aspects to the IJ's comments. First, they show a marked misunderstanding of the seriousness of the District Court's statement. Indeed, the IJ seems to have been under the impression that the use of the word "recommends" betrayed some lack of commitment in what the District Court was saying. See id. at 10, A.R. 36 ("This Court finds also important to note that it just says recommendation."). But, the use of that word should not have carried any such connotation. On the contrary, given the care with which district court judges typically make statements at a criminal

7

sentencing, any statement that a defendant faced danger because of cooperation should have been treated by the IJ with the utmost gravity.[2]  Moreover, the IJ could not realistically have expected the District Court to frame its concern in any way other than as a  recommendation.  Outside of the strict confines of a case and controversy over which it has jurisdiction and in which all parties, including any government agencies, have been heard, district courts do not presume to issue orders, so it is no surprise that it did not enter an order against removal.  It did only what it could do in the context of the case then pending: it put its institutional weight behind a blunt assertion that, because Mendez chose to cooperate with our government, he will be in real jeopardy if sent back to the Dominican Republic.

Second, and even more significantly, the IJ's comments indicate that he believed he could not give the District Court's recommendation any weight at all because the Department of Homeland Security had decided to proceed with removal.  The IJ said, "[t]he Department of Homeland Security, which has prosecutorial discretion, has chosen, in light of their [sic] investigation up to this time[,] not to follow through in that manner [meaning the District Court's recommendation against removal], and so this Court is left

---

[2] The IJ actually seemed inclined to take the District Court's recommendation down a notch by calling it "an indication of a recommendation," as if it were something less than a plainly worded recommendation against sending Mendez back to his home country.  I.J. Ruling Tr. at 9, A.R. 35.  While extemporaneous remarks made during an oral ruling can sometimes be less precise than a judge would make them in print, the IJ's choice of words does highlight what appears to be a lack of appreciation for the significance of the statement with which he was confronted.

8

only with deciding the Convention against Torture deferral claim." Id. at 10, A.R. 36. If, as it appears, the IJ was saying that he had no authority to consider the import of the District Court's recommendation because the Homeland Security Department wants Mendez removed, he is wrong both as a matter of logic and as a matter of law.

He is wrong as a matter of logic because being "left only with deciding the Convention against Torture . . . claim" is exactly the charge that requires the IJ to look at any "specific grounds . . . that indicate an individual will be personally at risk." Matter of S-V-, 22 I. & N. Dec. at 1313. The IJ explicitly recognized that at the outset of his discussion. I.J. Ruling Tr. at 3, A.R. 29. It is hard to understand why the IJ did not accept the direct statement of the District Court as a specific indication that Mendez is, or at least was in 2002, personally at risk. To the extent that the IJ was implying some distinction between torture and a more generalized risk of danger, it is a non-sequitur to say one cannot look into evidence of danger because one is busy inquiring into risk of torture. Torture is a subset of personal danger, and an inquiry into the latter may well answer pertinent legal questions about the former.

The IJ is also wrong as a matter of law because there is no legal principle that requires a blind deferral to deportation decisions by the Department of Homeland Security. On the contrary, "[a] decisionmaker must actually consider the evidence and argument that a party presents." Abdulai v Ashcroft, 239 F.3d 542, 549 (3d Cir. 2001) (internal quotation marks and citation omitted). As Chief Judge Becker observed, our

9

Court has suggested that immigration authorities deny an alien due process when they "act as a mere rubber-stamp." Id. at 549-50 (quoting Marincas v. Lewis, 92 F.3d 195, 202 n.7 (3d Cir. 1996)). In this case, the IJ was presented with evidence of a federal court's considered judgment about the risk Mendez faced if returned to the Dominican Republic. The court record reflecting that sentencing recommendation, which was made in the presence of Department of Justice lawyers and expressly invoked the involvement of Department of Justice lawyers (i.e., "cooperation with the U.S. Attorney"), provides at least an inference that some agreement was reached between Mendez and the Department of Justice regarding a recommendation against removal. That is evidence that could have and should have been considered, not ignored.

The BIA adopted the erroneous approach of the IJ. In its order dismissing Mendez's appeal, it said, "[r]eview of the record reveals no evidence confirming . . . an agreement" between the Department of Justice and Mendez respecting deportation. That, of course, is true only if one is prepared to say that the District Court's statement constitutes "no evidence." It may be that, after weighing that evidence, a fact-finder would still say that Mendez had failed to establish the existence of an agreement, but it cannot fairly be said that there was "no evidence."

In addition, the BIA missed the IJ's improper refusal to consider the District Court's statement. The BIA said that, "[i]n any event, an Immigration Judge is not bound by either an agreement with a government attorney or a recommendation from a court

10

with respect to an alien's deportation[,]" which is entirely correct but irrelevant, since the IJ did not review the recommendation and reject it. Instead, the IJ declared, "this is subject to prosecutorial discretion, and not something that this Court would have authority to make a decision in relation to . . . ." I.J. Ruling Tr. at 9-10, A.R. 35-36. It is that erroneous belief that he had no power to consider the evidence and make an independent decision that requires us to remand this matter.

We therefore grant Mendez's petition for review and remand the case for consideration of the District Court's recommendation and its implications as evidence of risk that may be pertinent to an analysis of Mendez's CAT claim, evidence that should be specifically addressed by our government. This pro se petitioner should be given an additional opportunity to adduce further evidence, if he has any, with respect to the agreement that he claims existed between him and the United States government. The government ought also to willingly come forward with the information it has in this regard,[3] so that the IJ can consider it with greater care than was possible when the District Court's statement was handed to him at the last minute on the day of the removal hearing.

For the foregoing reasons, we will grant the petition for review and remand for further proceedings.

---

[3] Of course, the Department of Homeland Security could make a record to overcome the judicial recommendation. It obviously has a crucial role in assessing risks, and it has access to expertise and information that a court may well lack in a given case.